## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TBC, INC.                                        :
                                                 :
                                                 :
     v.                  :     Civil No. CCB-14-3644
                                                 :
                                                 :
DEI HOLDINGS, INC., et al.                       :
                                                 :

## MEMORANDUM

TBC, Inc., an advertising firm, sues its former client, DEI Holdings, Inc., and several of
its subsidiaries for failure to compensate TBC adequately for its work.  In addition to DEI
Holdings, TBC seeks damages from DEI Sales, Inc., Polk Audio, Inc., Polk Audio, LLC, Boom
Movement, LLC, Definitive Technology, LLC, and Sound United, LLC.  The latter four entities
(together, the "LLC defendants") now move to dismiss TBC's complaint against them for failure
to state a claim under Federal Rule of Civil Procedure 12(b)(6).  And DEI Holdings, Inc., and
DEI Sales, Inc. (together, the "DEI defendants"), seek to dismiss TBC's complaint against them
under the same Rule.  Those motions have been fully briefed and no hearing is necessary to their
resolution.  *See* Local Rule 105.5 (D. Md. 2014).[1]  For the reasons explained below, the LLC
defendants' motion will be granted and the DEI defendants' motion will be denied in part and
granted in part.

## BACKGROUND

In its complaint, TBC describes itself as an advertising and public relations agency.  (*See*
Compl. ¶ 16.)  DEI Holdings is the "parent company of several brands in the consumer electronic
[sic] industry including, among others, Polk Audio, Definitive Technology, and Boom."  (*Id.* at ¶

---

[1] Accordingly, TBC's requests for hearings on both motions are denied.  (*See* ECF Nos. 18, 21.)

2.)  Sound United was the division of DEI Holdings that oversaw the operation of those brands.

(*See id.*)  Polk, Inc., and DEI Sales, Inc., both sold consumer audio equipment, including stereos,

headphones, and radios.  (*See id.* at ¶ 20.)

In 2011, Polk, Inc., hired TBC to develop and implement a marketing plan for its new

collection of headphones.  (*See id.* at ¶ 21.)  For those services, Polk, Inc., agreed to pay TBC an

estimated $12,500 per month on the basis of 83 hours of work per month at a "blended" hourly

rate of $150, with provision for additional payment for additional services.  (*Id.* at ¶ 23.)[2]  In

2012, DEI Sales hired TBC to promote Definitive Technology's Active Sound Bar.  (*See id.* at ¶

27.)  Much like the Polk contract, that agreement budgeted certain estimated monthly fees.  (*See*

*id.*)  TBC also performed additional work that was not specifically described in either of those

contract, for which "Polk, Inc. paid TBC additional project fees above and beyond the monthly

retainer for all such work and services," as specified in the contracts.  (*Id.* at ¶ 25.)  And DEI

Sales paid additional fees for services and work not specified in the Definitive Technologies

contract.  (*See id.* at ¶ 27.)

Polk, Inc., subsequently retained TBC to complete advertising services for a marketing

campaign for the Heritage Collection, a new line of personal audio equipment, on the terms

outlined in the 2011 Polk contract.  (*See id.* at ¶¶ 43–45.)  That work took substantially more

time than the presumptive 83 hours per month described in that contract.  Indeed, in 2013, TBC

worked well over 3,000 more hours than the 83 hours per month contemplated in the contract.

(*See id.* at ¶ 50.)  Among other things, TBC created a campaign theme, designed promotional

materials in traditional and digital media to promote the products, including a promotional video,

---

[2] The complaint explains that "[a] blended hourly rate is the average of the various hourly rates of the TBC employees who performed most of the services and work under the Polk Contract."  (Compl. ¶ 23.)

2

researched competitors, and frequently reported its progress.  (*See id.* at ¶ 53.)  TBC also

performed work on behalf of the Polk Audio, Definitive Technology, Sound United, and Boom

Movement brands.  (*See id.* at ¶ 54–57.)

      For this work, TBC was "paid the monthly fees for 2013 based on the budgeted eighty-

three (83) hours per month at the blended rate."  (*Id.* at ¶ 61.)  TBC alleges that, "[b]ecause of the

experience of their officers, directors and employees, [DEI Holdings, Polk, Inc., and DEI Sales]

knew that the nature and volume of requested work and services could not be performed in only

eighty-three (83) hours per month on a noncumulative basis and the time required to perform the

requested work and services would far exceed such hours."  (*Id.*; *see also id.* at ¶ 11.)

      On June 19, 2013, TBC's Executive Vice President and Managing Director, Howe Burch,

met with the chairman and CEO of DEI Holdings and DEI Sales, James E. Minarik, DEI

Holding's Chief Marketing Officer, Blair Tripodi, and DEI Holding's Chief Design Officer,

Michael DiTullo, in a Baltimore restaurant to discuss compensation for TBC's work in excess of

the monthly budget.  (*See id.* at ¶ 64; *see also id.* at ¶¶ 33, 34, 38, 40.)  Burch told Minarik and

Tripodi "that TBC must be paid for its work and services."  (*Id.* at ¶ 64.)  They "responded that

TBC has done a fantastic job as their agency and that TBC would be paid in full for the hours

worked."  (*Id.*)  Two days later, Burch sent Tripodi an email discussing these overages, including

an attached "Manpower Report" demonstrating that TBC had worked 1,636 hours over the

budgeted monthly hours as of June 21, 2013.  (*See id.* at ¶ 65.)  Tripodi never responded to that

email.  (*See id.*)

      After a meeting at Polk, Inc.'s Baltimore offices on August 16, 2013, TBC's Chairman

and Chief Creative Officer, Allan Charles, spoke with Tripodi about these overages, explaining

that TBC had performed over 2,120 hours in excess of the budgeted estimates as of that date. (*See id.* at ¶¶ 66–68.)  Tripodi "promised that TBC would be paid in full for all hours worked, that Mr. Charles did not have to worry, and that [DEI Holdings, Polk, Inc., and DEI Sales] would make TBC whole." (*See id.* at ¶ 70; *see also id.* at ¶ 11.)

In the months after that meeting, TBC continued to work for Polk, Inc., producing a promotional video that Tripodi indicated was essential to the Heritage Collection campaign, coordinating a launch event in New York City, and planning the purchase of media for late 2013 and early 2014.  (*See id.* at ¶¶ 70, 72, 74, 88.)

At a Baltimore restaurant on January 28, 2014, Tripodi told Burch that TBC would no longer perform advertising work on behalf of DEI Holdings, Polk, Inc., or DEI Sales.  (*See id.* at ¶ 95.)  On February 7, 2014, TBC submitted an invoice for all work in excess of the budgeted 83 hours per month, indicating that TBC had performed 3,261 hours of additional work.  (*See id.* at ¶¶ 97, 98.)  TBC has never been paid for that work.  (*See id.* at ¶ 99.)

Polk LLC, Boom LLC, Definitive LLC, and Sound United LLC formed on February 25, 2014.  (*See id.* at ¶¶ 5–8, 105.)  TBC alleges on information and belief that they are "successors to the unincorporated entities known as Polk Audio, Boom Movement, . . . Definitive Technology and Sound United." (*Id.* at ¶ 9.)  The day after the formation of those entities, Polk, Inc., merged with DEI Sales, which emerged from the transaction as the surviving entity.  (*See id.* at ¶¶ 3–4.)

In September 2014, TBC filed a complaint in Maryland court, naming DEI Holdings, DEI Sales, Polk Audio, Inc., Polk Audio, LLC, Boom Movement, LLC, Definitive Technology, LLC, and Sound United, LLC.  That complaint alleged counts of intentional misrepresentation,

concealment, breach of fiduciary duty, negligent misrepresentation, constructive fraud, breach of

contract, breach of the covenant of good faith and fair dealings, unjust enrichment, and

conversion.  The defendants removed the case to this court, asserting diversity jurisdiction.  (*See*

Notice of Removal, ECF No. 1.)  These motions followed.

## ANALYSIS

### I.  Standard of review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to

prove the elements of the claim.  However, the complaint must allege sufficient facts to establish

those elements."  *Walters*, 684 F.3d at 439 (citation omitted).  "Thus, while a plaintiff does not

need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

## II. The LLC defendants' motion to dismiss

The LLC defendants argue that each count of TBC's complaint is premised on conduct that predates their incorporation. Accordingly, they seek dismissal on the ground that TBC states no claim against them. Indeed, the LLC defendants formed in late February 2014, roughly a month after the termination of TBC's services. (*See* Compl. ¶¶ 5–8.) TBC, however, invokes the doctrine of successor liability, describing each of the LLC defendants as a "mere continuation of Polk Audio, Inc., DEI Sales Inc. and DEI holdings, Inc." and thus responsible for those entities' liabilities. (Opp. LLC Mot. Dismiss 5, ECF No. 19.)

Under "the general or traditional rule of corporate successor liability . . . . '[a] corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor.'" *Nissen Corp. v. Miller*, 594 A.2d 564, 565–66 (Md. 1991) (quoting 1 Timothy E. Travers, et al., *American Law of Products Liability* § 7:1 (3d rev. ed. 1990)). Where "the successor entity is a mere continuation or reincarnation of the predecessor entity," however, that general rule does not apply. *Id.* at 566. Here, TBC alleges "upon information and belief"

that the LLC defendants "acquired the[] assets and assumed the[] liabilities" of DEI and Polk, Inc.  (Compl. ¶ 105; *see also id.* at ¶ 9.)  This "mere continuation" exception seeks "to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors.  In other words, the purchasing corporation maintains the same or similar management and ownership but wears a 'new hat.'"  *Id.* (quoting *Balt. Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. Ct. Spec. App. 1989)).  Accordingly, the exception "applies where 'there is a continuation of directors and management, shareholder interest and, in some cases, inadequate consideration."  *Id.* at 567 (quoting 1 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 6.202(2)(c) (1989)).  Continued use of a predecessor's trade name, sale of a predecessor's products, and retention of some of a predecessor's accounts and employees does not suffice.  *See id.* 567–70 (refusing to endorse a "continuation of the enterprise" theory of successor liability, even in the product-liability context, where those factors are present); *Acad. of IRM v. LVI Envtl. Servs., Inc.*, 687 A.2d 669, 677–79 (Md. 1997) (same).  TBC's complaint focuses only on some of these latter factors, but is silent as to the management and ownership structure of the LLC defendants or the consideration they exchanged for the product lines they now market.  Accordingly, it has not alleged facts necessary to make its claim of successor liability plausible, and its claims against the LLC defendants will be dismissed.[3]

//

//

---

[3] The general rule that corporate successor liability does not follow the transfer of assets also does not apply where "there is an express or implied agreement to assume the liabilities." *Nissen Corp.*, 594 A.2d at 566. TBC's complaint alleges "upon information and belief" that the LLC defendants are "successors to the unincorporated entitles known as Polk Audio, Boom Movement, . . . Definitive Technology and Sound United," because they "acquired the[] assets and assumed the liabilities" of the DEI defendants and Polk, Inc. (Compl. ¶ 105; *see also id.* at ¶ 9.) TBC does not assert that allegation as a ground for denying the motion to dismiss in its opposition. Those unincorporated entities were merely subdivisions of DEI Holdings, which is a separate defendant in this lawsuit. And TBC's claims against DEI Holdings fail for a separate reason, as discussed below. *See supra* Part II.B.i.

**II. The DEI defendants' motion to dismiss**

    **A. Tort claims**

A plaintiff abandons a claim by failing to respond to a defendant's arguments against it in a motion to dismiss. *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (citing *Mentch v. E. Savings Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997)). The DEI defendants' motion to dismiss asserted that TBC did not state a claim for fraudulent concealment, constructive fraud, breach of fiduciary duty, and negligent misrepresentation for failure to allege adequately any duty independent of a contractual obligation. Such a contractual duty alone, they argue, could not support TBC's claims. (*See* Mem. Supp. Mot. Dismiss 6–9, ECF No. 15-1.) They add that TBC's fraud claim failed to meet the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). (*See id.* at 5–6.) And they contend that TBC's conversion claim is inadequate insofar as it is premised only on the alleged failure to make contractual payments. (*See id.* at 13–14.) TBC's opposition to that motion responds only to the DEI defendants' separate contractual arguments, which are assessed below. *See supra* Part II.B. The DEI defendants' objections to TBC's tort claims are entirely independent of the existence of a contract, and TBC offers no response to them. TBC has thus abandoned its tort claims, and the court will dismiss counts I, II, III, IV, V, and IX of its complaint.

//

//

//

//

### B. Contractual and quasi-contractual claims

#### i. Claim against DEI Holdings

The DEI defendants first argue that DEI *Holdings* was never party to any contract with TBC.[4]  Indeed, the operative TBC contract formed a relationship between it and Polk Audio, Inc., which subsequently merged into DEI Sales.  (*See* Opp. DEI Mot. Dismiss Ex. B, Polk Contract, ECF No. 16-2; Compl. ¶ 3.); *see also* Md. Code Ann., Corps. & Ass'ns § 3-114(f)(1) ("The successor is liable for all the debts and obligations of each nonsurviving corporation, partnership, limited partnership, limited liability company, and business trust.").  Accordingly, it seeks to dismiss TBC's contract claims against DEI Holdings.

TBC retorts that Polk Audio and DEI Sales were DEI Holding's subsidiaries, that all three entities shared personnel, and that DEI Holdings' officers, directors, and employees often directed TBC's work.  (*See* Opp. DEI Mot. Dismiss 5–6, ECF No. 16.)  TBC does not, however, argue that Maryland law permits it to pierce the corporate veil, which otherwise protects a corporate parent from liability on its subsidiary's obligations.  *See, e.g., Iceland Telecom, Ltd. v. Info. Sys. & Networks Corp.*, 268 F. Supp. 2d 585, 589 (D. Md. 2003) ("The Maryland state courts have emphasized the difficulty faced by a Plaintiff seeking to hold a parent liable for the

---

[4] In its initial filing, the DEI defendants wrongly identify TBC's short-lived 2012 contract with DEI Sales to promote Definitive Technology's Active Sound Bar as the operative agreement.  (*See* DEI Mem. Supp. Mot. Dismiss 2, ECF No. 15-1.)  TBC's opposition clarifies that TBC was fully compensated for all work performed under that contract, and that it seeks only uncompensated work performed under the terms of its 2011 contract with Polk, Inc.  (*See* Opp. DEI Mot. Dismiss 3, ECF No. 16.)  Because the 2011 Polk contract and the 2012 DEI Sales contract are materially similar in all ways pertinent to the DEI defendants' arguments, as made clear in the reply, the court considers those arguments here.

TBC moves to strike that reply or, alternatively, for leave to file a surreply on the ground that the reply raises novel arguments not included in its initial memorandum in support of dismissal.  To the extent TBC moves to strike a reply brief under Federal Rule of Civil Procedure 12(f), that is an inappropriate remedy.  *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 n.10 (D. Md. 2013).  To the extent it seeks leave to file a surreply, such filings "are generally disfavored" and will not be permitted where the arguments in a "reply brief are merely responses to new arguments made by [a party] in the[] response."  *Id.* at 801 (quoting *Aguilar v. LR Coin Laundromat*, Civil No. RDB-11-2352, 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012)).  That is what happened here.  Accordingly, TBC's motion , (ECF No. 27), will be denied.

obligations of a subsidiary . . . . ").  Nor is such piercing permitted unless "it is necessary to

prevent fraud or enforce a paramount equity."  *Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204,

1209 (Md. 2003) (quoting *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225, 234

(Md. 1975)).  As noted, TBC has abandoned its fraud claim.  *See supra* Part II.A.  Even were it

otherwise, TBC has not alleged facts suggesting that DEI Holdings used its subsidiaries "as a

mere shield for the perpetration of a fraud," that it ignored its subsidiaries' formalities, that those

subsidiaries were undercapitalized, or any other facts pertinent to the many factors a court must

assess before authorizing a plaintiff to pierce the corporate veil.  *See Hildreth*, 838 A.2d at 1209–

10.

   For these reasons, the court will grant DEI's motion to dismiss TBC's claims against DEI

Holdings.

### ii. Claims against DEI Sales

   TBC alleges that DEI Sales is liable under three separate contractual or quasi-contractual

theories: breach of contract, breach of the implied covenant of good faith and fair dealings, and

unjust enrichment.[5]  DEI Sales moves to dismiss each of those causes of action, but the court

concludes that TBC has stated claims for breach of contract and for unjust enrichment.

### a. Breach of contract

   DEI Sales asserts that TBC does not state a claim for breach of contract even against it,

because TBC failed to allege that it obtained prior approval either for performing overtime work

---

[5] TBC describes the third of these counts as a claim of "quantum meruit."  (*See* Compl. Count VIII.).
Properly speaking, "*quantum meruit* is not a theory of recovery *per se* but is a measure of damages recoverable for
breach of implied contract or unjust enrichment."  *Blackstone Int'l Ltd. v. Md. Cas. Co.*, 88 A.3d 792, 796 n.2 (Md.
Ct. Spec. App. 2014).  TBC alleges that it conferred a benefit on DEI, which DEI knowingly accepted without
payment in the context of an ongoing commercial relationship.  (*See* Compl. ¶¶ 259–63.)  The court thus interprets
TBC's "quantum meruit" claim as one for unjust enrichment.  *See Hill v. Cross Country Settlements, LLC*, 936 A.2d
343, 351 (Md. 2007) (outlining the elements of an unjust enrichment claim).

or work outside the scope of services, or that it timely billed for that work, as the contract allegedly requires.  (Mot. Dismiss 10–11.)  Accordingly, DEI Sales concludes, TBC does not allege that DEI Sales' predecessor breached the contract.

"[T]o state a claim for breach of contract [under Maryland law], a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant."  *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010).  TBC's complaint alleges that DEI Sales' predecessor owed it payment for the services it performed on request under the contract and it was never paid for those requested services.  The complaint specifies the services TBC performed in great detail, as well as receipt of those services and expressions of satisfaction with their quality.  On the basis of those facts, it is plausible that DEI Sales' predecessor breached its contract with TBC, and TBC need allege no more.

DEI Sales, however, would require TBC to allege not only that it performed the services contemplated by the contract but also that TBC complied with every procedural obligation described in that agreement.  That argument overstates TBC's burden.  Although the Maryland Court of Appeals once stated that "one who sues for the breach of a contract, which requires him to perform certain acts before he becomes entitled to demand that for which he sues, must allege and prove performance on his part," *Johnson & Higgins v. Simpson*, 163 A. 832, 834 (Md. 1933), he need not allege perfect performance.  As the Court of Appeals later clarified, *Johnson & Higgins* considered a case in which the plaintiff "was completely silent as to the performance of services on which the claim was predicated."  *Rocklin v. Eanet*, 89 A.2d 572, 574 (Md. 1952).  The failure to allege the performance of certain subordinate procedural obligations is not an

element of the cause of action and thus need not be alleged.  If DEI's failure to perform "was

based on [TBC's] previous breach, or failure to perform necessary conditions, it would be a

matter of defense." *Id.*

Certainly, Maryland law does not require a plaintiff to allege *perfect* performance to sue

for breach of contract.  Like most jurisdictions, Maryland recognizes the doctrine of substantial

performance, which "allows a party that has substantially complied with a contract to recover for

its performance despite the fact that it has breached the contract by failing to comply fully with

its terms."  15 *Williston on Contracts* § 44:58 (4th ed. 2014); *accord Dep't of Hous. & Cmty.*

*Dev. v. Mullen*, 886 A.2d 900, 919–20 (Md. Ct. Spec. App. 2005) (explaining that application of

the rule depends on the magnitude and willfulness of the breach).  The capacity of a breaching

plaintiff to sue on the contract it breached necessarily implies that perfect performance is not

required.

Accordingly, TBC has stated a claim for breach of contract.

### b. Breach of the covenant of good faith and fair dealings

Maryland law does not recognize an independent cause of action for breach of the

implied covenant of good faith and fair dealings.  "Rather, it 'is merely part of an action for

breach of contract,' as '[t]he implied duty of good faith prohibits one party to a contract from

acting in such a manner as to prevent the other party from preforming his obligations under the

contract.'"  *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 598 (D. Md.

2013) (alteration in original) (quoting *Mount Vernon Props., LLC v. Branch Banking & Trust*

*Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006)).  TBC's freestanding claim for breach of that

covenant will thus be dismissed.

### c. Unjust enrichment

TBC seeks to recover under principles of unjust enrichment for the uncompensated work it performed under an express contract, the 2011 Polk agreement.  "In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, 'may not be brought where the subject matter of the claim is covered by an express contract between the parties.'" *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000)).  Accordingly, DEI Sales argues that the existence of that express contract precludes TBC's claim.

Notably, however, Maryland "recognize[s] exceptions" to the rule barring quasi-contractual recovery for disputes governed by express contracts, "when there is evidence of fraud or bad faith, *there has been a breach of contract* or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Id.* at 567–68 (emphasis added) (quoting *J. Roland Dashiell & Sons*, 747 A.2d at 608–09).  For example, a breaching plaintiff may usually obtain restitution, on a theory of unjust enrichment, for the net benefits conferred on a defendant who refuses to perform contractual duties in light of the plaintiff's breach.  *See Restatement (Second) of Contracts* § 374 (1981); *Restatement (First) of Contracts* § 357 (1932).  Such restitution may be available even if the breaching plaintiff did *not* substantially perform its obligations under the contract.  *See Cambridge Techs., Inc. v. Argyle Indus., Inc.*, 807 A.2d 125, 136 (Md. Ct. Spec. App. 2002).

As noted, DEI Sales asserts that TBC has breached its agreement.  If a jury concludes that those alleged breaches were so great that TBC did not substantially perform the contract, then TBC may still recover on the basis of unjust enrichment.  Because Federal Rule of Civil

Procedure 8(e)(2) permits parties to plead alternative, inconsistent legal theories, "dismissing the unjust enrichment claims now would be premature." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010) (refusing to dismiss an unjust enrichment claim under Maryland law where an alternative claim premised on an express contract remained in dispute).

### C. Claim for injunctive relief

In its complaint, TBC asserts its entitlement to injunctive relief, which it denominates as a separate count.  As DEI correctly points out, "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action, as the complaint does in this case." *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012).  But that impropriety is inconsequential where, as here, the plaintiff has properly pleaded several separate causes of action.

Although TBC's complaint requests "temporary . . . injunctive relief," (*see* Compl. ¶¶ 269–70), it has neither formally moved for such relief nor submitted the evidentiary support such a motion would require.  *See generally Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Accordingly, the court will not consider that request at this time.

//

//

//

//

//

//

//

14

**CONCLUSION**

For the reasons stated above, the LLC defendants' motion to dismiss will be granted and the DEI defendants' motion to dismiss will be denied in part and granted in part.  Specifically, all of TBC's claims against the LLC defendants and DEI Holdings will be dismissed, as will all its tort claims and its claim for breach of the implied covenant of good faith and fair dealings against DEI Sales.  TBC's claim that DEI Sales breached its contract and was unjustly enriched will be permitted to continue.

A separate order follows.


<u>March 24, 2015</u>                                  _____/S/_____
Date                                                      Catherine C. Blake
                                                              United States District Judge

15